IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Guess, #253980, | ) CIVIL ACTION NO. 9:10-1161-TLW-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Cecilia Reynolds, Warden of Kershaw Correctional | ) |
| Institution; Timothy Riley, Warden Tyger River | ) **REPORT AND RECOMMENDATION** |
| Institution; Jon Ozmint, Agency Director; | ) |
| Captain Jerry G. Alexander; Ms. Middlebrook, | ) |
| Administrator Tyger River CI; Gary Lane, Asst. | ) |
| Warden; Laura Caldwell; Ms. D. Manness; and all | ) |
| involved parties in their individual capacities, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 1, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 2, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff did not file a response by the deadline set forth in the Roseboro order;



– 1 –

however, due to Plaintiff's attempts to obtain legal counsel he was granted an extension of time until February 11, 2011 to file his response to the Defendants' motion for summary judgment. <u>See generally</u>, Court Docket Nos. 29, 34. Plaintiff again did not file a response to the Defendants' motion, but did submit a letter on February 14, 2011 in which he claimed, <u>inter alia</u>, that he was unable to mail out his response because the prison would not provide him with envelopes and postage to do so. In response to this letter, the Court obtained a response from defense counsel, with attached documentation, showing that Plaintiff has been and is receiving mailing supplies. <u>See</u> Court Docket Nos. 39, 42.

Plaintiff still has not filed any response to the Defendants' motion, which has now been pending over four (4) months, and which is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff is a frequent filer of litigation in this Court. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]. Plaintiff alleges in his verified complaint[2] that on December 19, 2007 he was placed on lockup at the Ridgeland Correctional Institution (where he was at that time housed) after being charged with having an alcoholic drink. Plaintiff alleges that he was found not guilty of

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by <u>pro se</u> litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, even though the Plaintiff has not filed a response to the motion for summary judgment, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



that offense following a disciplinary hearing, but was immediately thereafter charged with a sexual assault. Plaintiff alleges that on January 14, 2008 he was again found not guilty following a disciplinary hearing, but he never left lockup because he was charged with another sexual assault on January 21, 2008, and that on January 24, 2008 he was again found not guilty following a disciplinary hearing, that on January 28, 2008 he wrote the head of Classification ("Mixon") to inquire why he was still on lockup, and was advised that he was awaiting a potential transfer. Plaintiff alleges that he was subsequently advised by "Warden Cohen" on April 4, 2008 that he was to be seen by the "ICC Board" on April 7, 2008. At that hearing on April 7, 2008, Plaintiff was advised that he was a "PREA" (Prison Rape Elimination Act) inmate, following which he was sent to the Kershaw Correctional Institution.

Plaintiff alleges that on May 21, 2008, he wrote the Defendant Reynolds (Warden of KCI) to ask about getting out of lockup, but that Reynolds simply referred him to a letter from the Defendant Ozmint, SCDC Director. Plaintiff alleges that remained on lockup at KCI "for about 16-18 months with no hearing". Plaintiff alleges that wrote several individuals about his situation, and filed a grievance on May 5, 2008, which was denied.

Plaintiff alleges that on August 11, 2009 he was transferred to the Tyger River Correctional Institution. Plaintiff alleges that on August 13, 2009 he filed a request with the Defendant Middlebrook for legal paper and envelopes, but was told by a "Lt. Bates" that he was not going to get his requested amount of paper and envelopes, and that he would be lucky if he got eight sheets of paper and two envelopes. Plaintiff alleges that on August 14, 2009 he wrote the Defendant Caldwell (Assistant Warden at TRCI) complaining about the temperature in his cell, lack of legal materials, a flooding toilet, and insects. Plaintiff alleges that on August 26, 2009 he wrote a



grievance about being refused proper access to the courts. Plaintiff further alleges that he wrote several individuals about being in lockup and not being transferred to "the yard", to which he either received no responses or responses denying his requests. Plaintiff alleges that he has now been on lockup for about two and one half years. Plaintiff further alleges that since his transfer to TRCI he receives no outside recreation, that there are spiders and other types of insects in his cell, that he has an inadequate mattress, and that although he has written to several of the Defendants concerning these conditions of his confinement, he has either received no response or inadequate responses.

Plaintiff alleges that on April 3, 2010 he fell and hurt his back, which rendered him unable to move. Plaintiff alleges that his fall on April 3, 2010 was around 1:00 p.m., and that he was discovered by two correctional officers (Barns and Fisher) on the floor at about 1:25 p.m. Plaintiff alleges that Barns called "Ms. Avinger" (apparently a nurse), who told Barns to give Plaintiff some Motrin and to lay in bed. Plaintiff alleges that he was "crying" and continued to lay on the floor. Plaintiff alleges that Barns and Fisher checked on him again at 1:56 p.m., and that Fisher told him he had called the Warden and the Captain, and that was all that he could do. Plaintiff alleges that at 2:31 p.m. Barns told him to get up so they could place handcuffs on him and take him to medical, but Plaintiff told them he could not move because his lower back hurt. Plaintiff alleges that at 2:44 p.m. Barns and Fisher returned with "Capt. Peake", who asked Plaintiff where he was hurt. Plaintiff alleges that through "sobs and pains I point at my back . . . .," and that Peake and Barns then returned to his cell with Nurse Avinger at 2:57 p.m. Plaintiff alleges that Nurse Avinger reviewed his condition and asked him some questions, but that when Plaintiff complained that he still could not sit up after being requested to do so by Avinger, Avinger "threw her hands up and say 'Cpt. Peake it is up to you'". Plaintiff alleges that Peake, Barns and Avinger then left.



Plaintiff alleges that at 3:00 p.m. Peake, Fisher and Barns returned with "Sgt. David Fowler". Plaintiff alleges the officers had "a shield", and that Plaintiff was instructed to turn away from the door. The officers then entered Plaintiff's cell, but when Peake tried to lift Plaintiff to place him in a wheelchair Plaintiff "scream[ed] out in pain." Plaintiff alleges that several of the officers then "recklessly" lifted him up and "throw" him into the wheelchair and took him to medical. Plaintiff alleges that once he got to medical, Nurse Avinger told him that "she saw people who died ain't been in this much pain." Plaintiff was then taken back to his cell "without no help or nothing."

Plaintiff alleges that at 4:31 p.m. Barns and Fisher brought food to his cell, and slid the food tray under Plaintiff's door. Plaintiff alleges that he told Fisher "I can't move". Plaintiff alleges that Fisher returned at 5:00 p.m. and removed the food tray, even though he could see that Plaintiff had not eaten "or was unconscious". Plaintiff alleges from that point through April 11, 2010 he received no medical treatment and no food, except for where he "had to crawl to eat." Plaintiff alleges that he was unable to get his food "for days", but that he was "refused all meals per Captain Alexander." Plaintiff alleges that this was done out of retaliation for Plaintiff challenging the conditions of his confinement. Plaintiff alleges that he his now receiving care from a doctor, but that all the doctor gives him is muscle relaxers.

Plaintiff also generally alleges that he does not receive adequate amounts of pens or paper, which is denying him access to the courts; that the food he receives is "against my Islamic belief[s]", and that the food is always cold and stale; that his jumpsuit is the wrong size and is "nasty and unclean"; that he does not receive proper hygiene supplies; and that he still does not have an adequate mattress. Plaintiff further complains that his cell has inadequate venting, that his cell has biting insects, that he cannot exercise, that he "can't get no good schooling" nor does he receive



magazines, and he cannot go to "services" on Fridays.  Plaintiff alleges that filing grievances "don't work, cause they process take too long . . . ."  Plaintiff seeks monetary damages, as well as specified injunctive and/or declaratory relief.  See generally, Plaintiff's Verified Complaint, with attached Exhibits [various Requests to Staff Member and Grievance Forms].

        In support of summary judgment in the case the Defendants have submitted an affidavit from Ann Hallman, who attests that she is the Inmate Grievance Administrator for the Department of Corrections.  Hallman attests that the Department of Corrections has an established inmate grievance procedure that allows inmates to grieve issues related to their confinement; including, but not limited to, the conditions of their confinement and classification issues.  Hallman attests that, under this procedure, an inmate must first attempt to resolve the issue through an informal resolution, and that if this is not successful the inmate must then file a Step 1 grievance by filling out an Inmate Grievance Form, which must be submitted withing fifteen (15) days of the alleged incident or occurrence.  If the inmate is not satisfied with the response to his Step 1 grievance, he must then appeal that response by checking the box on the response that states "I do not accept the Warden's decision and wish to appeal" within five days of receipt of that response. The inmate must then submit a Step 2 grievance form to the Inmate Grievance Coordinator (IGC) at the institution where he is housed.  The response to the Step 2 grievance, or appeal, is considered the Department's final agency decision on the issue.

        Hallman attests that she has reviewed Plaintiff's grievance history and has attached to her affidavit true and accurate copies of the Step 2 grievances filed by the Plaintiff since his incarceration at TRCI.  **Grievance 292-10** involves disciplinary charges filed against the Plaintiff for refusing and/or failing to obey orders or refusing a directive to come to his cell door and be



cuffed.  Plaintiff asserts in this grievance that his back injury prohibited him from coming to the cell

door and being cuffed; however, his disciplinary conviction was upheld.  Plaintiff has not contested

his disciplinary conviction in this lawsuit.  **Grievance 224-10** relates to Plaintiff's allegations about

the conditions of his mattress.  Plaintiff complains in this grievance that his mattress is only one layer

of cotton, and is mildewed, soiled and smelly.  **Grievances 858-09** and **859-09** involve Plaintiff

complaining that "emergency" grievances he had filed concerning being denied adequate legal

materials and access to the courts (859) and being denied adequate recreation (858) was not properly

handled.  These grievances involved the workings of the grievance process itself, and not the

underlying claims.  However, Plaintiff did complete the grievance process for his recreation claim

in **Grievance 706-09**, and with respect to his access to the courts in **Grievance 707-09**.  At the time

Plaintiff filed this lawsuit, he also had one active pending Step 2 grievance (**847-09**), which again

dealt with the amount of paper he was receiving.

   Hallman attests that these are all of the Step 2 grievances that were filed by the

Plaintiff since his incarceration at TRCI.  <u>See generally</u>, <u>Hallman Affidavit</u>, with attached Exhibits.[3]

   The Defendants have also submitted an affidavit from the Defendant Jerry Alexander,

a Captain with the Tyger River Correctional Institution charged with overseeing the daily operation

of the Special Management Unit (SMU), where Plaintiff is housed.  Alexander attests, <u>inter alia</u>, that

---

   [3]Some of these grievance forms are also attached to Plaintiff's Complaint.  However, Plaintiff's Complaint also includes as attachments copies of Step 1 Grievances **590-09** (dated August 27, 2009) complaining about the temperature in Plaintiff's cell, and **875-09** dealing with notarization of legal documents.  No Step 2 grievances with respect to these claims have been provided, and therefore there is no evidence that these grievances have been exhausted.  Plaintiff has also attached to his Complaint copies of a completed Step 2 grievance from the Kershaw Correctional Institution (**Grievance 312-08**) wherein he contested his PREA classification and detention.  That issue is discussed separately hereinabove, <u>infra</u>.



all inmates in the SMU are offered outside recreation when weather permits, and that if outside recreation is not available due to weather conditions, information on an indoor exercise is made available to the inmates. Alexander attests that since Plaintiff has been classified under PREA, he must take recreation alone. Furthermore, in order to be eligible to receive recreation, an inmate must be in compliance with the Department's rules and regulations, including such things as standing for counts and being properly dressed in your issued jumpsuit. Alexander also attests that Plaintiff has been given the opportunity to take recreation, but has refused on several occasions, while there have also been several occasions where Plaintiff failed to comply with SCDC rules and regulations, and therefore was not eligible to have recreation, even though the opportunity to recreate was offered to him.

        With respect to Plaintiff's claims about his mattress, Alexander attests that each inmate is issued a mattress, and that prior to being issued a mattress it is sanitized. Inmates are also provided with sheets, and those sheets are collected and washed during regularly scheduled laundry times. Alexander attests that Plaintiff had a complaint relating to his mattress near the end of March 2010 which involved Plaintiff shoving his mattress under his cell door and telling security staff that he did not want it. Alexander attests that Plaintiff stated that there were bugs in his mattress, but that there were no bugs seen in the mattress. Alexander attests that Plaintiff was informed that if he chose not to use the mattress issued to him, he would have to go without a mattress as the prison did not have any additional mattresses to issue to him at that time due to budget constraints, but that Plaintiff still refused to use the issued mattress. However, once extra mattresses were available, Plaintiff was issued a different mattress, which he accepted. See generally, Alexander Affidavit.

- 8 -



## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

## I.

## (PREA Classification Issue)

Plaintiff first challenges his placement in the KCI Special Management Unit under the Department of Corrections PREA policy. The KCI grievance forms Plaintiff has attached to his Complaint constitute sufficient evidence for purposes of summary judgment to show that Plaintiff exhausted his administrative remedies with respect to this claim. However, the Court is constrained



to note that Plaintiff has already litigated this issue in another lawsuit filed in this District. <u>Guess v. Ozmint, et al.</u>, Civil Action No. 9:08-3076. The Court granted the Defendants Ozmint and Reynolds, as well as the other individuals named in that lawsuit, summary judgment in that case on this claim, concluding that Plaintiff had failed to set forth evidence sufficient to give rise to a genuine issue of fact that his constitutional rights had been violated by his placement in lockup as a PREA inmate.

    <u>Res judicata</u> bars a claim when there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same cause of action. <u>I.A.M. Nat'l. Pension Fund v. Indus. Gear Mfg. Co.</u>, 723 F.2d 944, 946-947 (D.C.Cir. 1983). To establish <u>res judicata</u> as a bar to this litigation, the Defendants must demonstrate the following three elements: 1) identity of the parties or their privies in the two suits; 2) identity of the subject matter in both the earlier and the later suit; and 3) a final determination on the merits of the claim in the prior proceeding. <u>Briggs v. Newberry County Sch. District</u>, 838 F.Supp. 232, 235 (D.S.C. 1992), <u>aff'd.</u>, 989 F.2d 491 (4th Cir. 1993); <u>Andrews v. Daw</u>, 201 F.3d, 521, 524 (4th Cir. 2000). There was certainly a final judgment on the merits in Plaintiff's prior suit, which was dismissed with prejudice on summary judgment. <u>Guess v. Ozmint</u>, Civil Action No. 9:08-3076. Therefore, that element for establishing <u>res judicata</u> is met. Additionally, two of the eight Defendants named in this case (Ozmint and Reynolds) are the same Defendants who were named in Plaintiff's previous lawsuit, and the remaining Defendants, who are all also employees of the Department of Corrections, qualify as privies. <u>Cf.</u> <u>Bells v. Ozmint</u>, No. 06-2266, 2007 WL 1862668, at * 2, and n. 2 (D.S.C. Jun. 6, 2007). Therefore, the first element for establishing <u>res judicata</u> is also present. Finally, since the issue of Plaintiff's placement under the Department of Corrections PREA policy was litigated and rejected by the Court in that prior



lawsuit, the element of identity of the subject matter of the litigation has been met, thereby establishing the Defendants' entitlement to <u>res judicata</u> with respect to the issue of the constitutionality of the policy in general, as well as Plaintiff's claim of having been subjected to this policy. <u>Guess v. Ozmint</u>, <u>supra</u>; <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].

The ruling in Plaintiff's previous case is binding in the case at bar, and the Court is not required to relitigate that issue. <u>Aloe Creme Laboratories, Inc.</u>, 425 F.2d at 1296 ["The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient."]. Therefore, this claim should be dismissed.

## II.

### (Exhaustion of Administrative Remedies).

With respect to Plaintiff's remaining claims, Defendants assert, <u>inter alia</u>, that all of Plaintiff's claims except for Plaintiff's claims relating to his allegedly improper mattress, alleged lack of recreation, and denial of access to the court, should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to these other claims prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. <u>See</u> <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; <u>Jones v. Bock</u>, 549 U.S. 199 (2007). To meet this



burden, Defendants have submitted the affidavit from Ann Hallman, who attests that she is an Inmate Grievance Administrator with the Department of Corrections, that she has reviewed Plaintiff's grievance history for the time period he has been at TRCI, and that the only grievances Plaintiff has filed on which he received a final agency decision are his grievances dealing with lack of paper and writing supplies, lack of access to a mattress, and lack of access to adequate recreation. See Hallman Affidavit, with attached Exhibits [Grievance Forms].

Although Plaintiff makes the general and conclusory claim in his Complaint that it takes too long to have grievances processed, he has provided no evidence or even argument in opposition to the Defendants' evidence submitted in this case showing that he has only properly exhausted the three claims relating to access to the courts, access to a proper mattress, and access to adequate recreation. The exhibits Plaintiff attached to his Complaint fail to support his arguments, as the additional grievances he has provided are only Step 1 grievances, and only one of those even deals with an issue raised in this lawsuit (the temperature in his cell). Further, both of these Step 1 grievances show that they were reviewed and ruled upon by the Defendants, and Plaintiff has provided no evidence to show that he took any further action with respect to either of these two grievances.

Plaintiff's general and conclusory claim in his Complaint that the prison was not timely processing his grievances, unsupported by even his own exhibits and contrary to the affidavit and exhibits submitted by the Defendants, is not sufficient to give rise to a genuine issue of fact as to whether Plaintiff exhausted his administrative remedies with respect to any of the remaining claims asserted in this lawsuit. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see Papasan v. Allain, 478 U.S.

- 12 -



265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations].[4]  Therefore, after careful consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Defendants that there is no evidence before the Court sufficient to raise a genuine issue of fact as to whether Plaintiff exhausted any of these other claims prior to filing this lawsuit.  Hence, as the Defendants having established their affirmative defense with respect to these other claims, they should be dismissed.  Cf. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (S.C. 1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not properly pursue his administrative remedies].

### III.

### (Merits of Remaining Claims).

As employees of the Department of Corrections, all of the Defendants are subject to

---

[4]Plaintiff's assertion that the Defendants were not following their own grievance policy, assuming for purposes of argument that Plaintiff even intended to assert such a claim, also fails to set forth a viable claim.  Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah,  No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990));  Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]); Adams v. Rice, 40 F.3d 70, 75 (4th Cir. 1994)[There is no constitutional right to institutional grievance procedures.].



suit for damages under § 1983 in their individual capacities, and for injunctive relief in their official capacities.  Will v. Michigan Dep't of State Police, 491 U.S. at 71; Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977).  However, although subject to suit, Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether any named Defendant violated his constitutional rights.[5]

First, Plaintiff has provided no evidence whatsoever (other than his general and conclusory assertions in his Complaint) to show that the amount or manner of recreation he was provided and/or the quality of the mattresses he received violated his constitutional rights.  House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].  In order to establish a violation of his constitutional rights, Plaintiff must have evidence not only showing that his living conditions violated contemporary standards of decency,  but that prison officials also acted with deliberate indifference to such conditions.  The first of these factors, known as the "objective" component, requires a showing that the alleged deprivation was "objectively sufficiently serious" such that the conditions denied the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); see

---

[5]Many of the Defendants are also entitled to dismissal because no claims have been made against them individually in which they were involved, because they are named only in a supervisory capacity, or on other grounds.  However, since Plaintiff's remaining claims are all subject to dismissal on the merits, these other defenses have not been addressed.



also Hudson v. McMillian, 503 U.S. 1, 6 (1993). The second factor, the "subjective" component, requires Plaintiff to show that prison officials acted with deliberate indifference to this "sufficiently serious" deprivation. Farmer, 511 U.S. at 834. This second component requires more than mere negligence by a named Defendant. Rather, Plaintiff must have evidence showing a reckless disregard by a Defendant of a substantial risk of serious harm. Id., at 835-836. No such evidence has been presented.

With respect to his mattress, Plaintiff does not allege that he did not have a mattress - he was simply dissatisfied with the mattress he had been provided, alleging that it smelled, was (apparently) too thin, and that it had bugs. Of course, one of Plaintiff's complaints is that his cell had bugs, so that complaint would not have been unique to his mattress. In any event, Plaintiff is a prisoner in a state penitentiary, not a guest at a hotel. Prison conditions are often times less than ideal, but that does not necessarily equate to a violation of the Constitution of the United States. Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). Rather, an excessive risk to the inmate's health or safety must be shown. Farmer, 511 U.S. at 834.

The evidence provided to the Court shows that Plaintiff's mattress had inside stuffing and that he also had been provided with struts, but that Plaintiff had thrown the inside stuffings under the cot. This was in March 2010. The evidence reflects that by May 2010, Plaintiff had thrown out the mattress he had been issued, even though he had been advised that there were no new mattresses available, electing to sleep without a mattress until he ultimately was issued another one sometime





thereafter.  <u>See</u> Step 1 and Step 2 Grievance Forms for Grievance 224-10.  Hence, the evidence shows that Plaintiff slept for a period of time without a mattress, not because he was not provided one, but because he chose to do so.  In any event, it is clear that merely being deprived of a mattress for a short period of time does not amount to a <u>per se</u> violation of a prisoner's constitutional rights where there is no resulting serious injury, and Plaintiff has provided no evidence to show that he suffered any injury as a result of his dispute with prison authorities about the condition of his mattress.  <u>See also</u>, Avinger Affidavit, with attached Medical Summaries; <u>Holley v. Johnson</u>, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; <u>see</u> <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required]; <u>Thaddeus-X v. Wozniak</u>, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; <u>cf</u>. <u>Grissom v. Davis</u>, 55 Fed.Appx. 756, 757-758 (6th Cir. 2003) [No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de minimis physical injury]; <u>Lopez v. South Carolina Dept of Corrections</u>, No. 06-2512, 2007 WL 2021875, at *3 (D.S.C. July 6, 2007) [Dismissing claim by prisoner that he was not provided, in part, with a mattress, where prisoner failed to assert significant physical or emotional injury]; <u>Eady v. Sawyer</u>, No. 02-1225, 2005 WL 2206249, at *5 (S.D.Ill. Sept. 12, 2005) [case dismissed where, although Plaintiff may have experienced some discomfort, he made no viable claim of physical harm suffered due to temporary lack of mattress or pillow]; <u>McGoldrick v. Farrington</u>, 462 F.Supp.2d 112, 113-114 (D. Me. 2006); <u>Schroeder v. Kaplan</u>, No. 93-17123, 1995 WL 398878, * 2 (9th Cir. July 7, 1995)[No mattress for

approximately one month held not to be unconstitutional]. Therefore, no constitutional violation involving Plaintiff's mattress situation is presented in the evidence before this Court. Cf. Schroeder, 1995 WL 398878, * 2 ["In the majority of decisions where the court considered whether failure to provide a mattress to an inmate violated the Eighth Amendment, the failure was accompanied by other factors - e.g., extreme cold, lack of sanitary conditions, solitary confinement, inadequate clothing, or improper diet"]; James v. Davis, No. 05-2733, 2006 WL 2171082, at * 2 (D.S.C. July 31, 2006) [Finding that dispute involved not whether Plaintiff was just deprived of a mattress for a period of five months, but whether he had been deprived of both a mattress as well as other items of clothing and bedding]; Wilson v. Seiter, 501 U.S. 294, 304-305 (1991)[Finding that some conditions of confinement may establish an Eighth Amendment violation "in combination" with other adverse conditions, but may not do so standing alone].

Plaintiff's general and conclusory allegations in his complaint about lack of adequate exercise is also insufficient, without more facts or supporting evidence, to survive the Defendants' motion for summary judgment. Indeed, Plaintiff's only mention of this alleged deprivation in his Complaint is where he states "no exercise." The exhibits Plaintiff has attached to his Complaint also barely mention this issue, other than reflecting Plaintiff's complaint about having to wear shackles. However, the Defendants' evidence reflects that all inmates in the SMU are offered outside recreation when weather permits, and that even in bad weather information on an indoor exercise regimen is made available to inmates. Alexander attests in his affidavit that there have also been several occasions where Plaintiff failed to comply with the SCDC's rules and regulations, and therefore was not eligible to have recreation, and that on other occasions Plaintiff was given the opportunity to take recreation, but refused. Plaintiff has provided no exhibits, or even argument, to



contest this evidence. Indeed, Plaintiff's grievance documents reflect that Plaintiff was complaining about his recreation being scheduled at night and that he remained shackled, not that he was not receiving recreation. The response to Plaintiff's Step 1 grievance reads: "Based on your current security status this will be the procedure", while the response to his Step 2 grievance reads:

> Your concern has been reviewed. Policy does not state what time out-of-cell exercise can be offered and due to shortage of staff the necessary adjustments have been made. You have the right to refuse to go out at the time out-of-cell exercise is offered does not meet with your approval. At the time you filed your grievance you were on a Level I status and policy allows for the use of the additional restraints and states the Warden is authorized to instruct the restraints not to be removed. Therefore, your grievance is denied.

See Step 1 and Step 2 Grievance Forms (Grievance 706-09).

Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff was offered outside recreation, but on occasion would refuse because he did not like exercising at night or having to wear shackles when he was outside of his cell. No constitutional violation is indicated in any of this evidence. Weens v. Lawrence, No. 09-65, 2009 WL 2422795 at * * 2-3 (S.D.Ga. Aug. 6, 2009)[shackling pre-trial detainee during exercise did not violate Fourteenth Amendment]; Ruffino v. Lawrence, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions]; Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]; Farmer, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure

- 18 -



of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], <u>reh'd</u> <u>denied</u>, 75 F.3d 448 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, <u>County of Kern v. Anderson</u>, 116 S.Ct. 306 (1995); <u>Cf</u>. <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; <u>Chavis v. Fairman</u>, No. 94-1503, 1995 WL 156599 at * * 5-6 (7th Cir. Apr. 6, 1005)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."].  This claim is without merit.

Finally, Plaintiff has also failed to furnish facts or evidence sufficient to give rise to a genuine issue of fact as to whether he was denied access to the courts to survive summary judgment.  It is not even disputed in Plaintiff's Complaint that he was receiving pens, paper and envelopes from the prison - Plaintiff is simply complaining about the *amount* of writing and mailing supplies he was receiving, claiming that it was hindering his ability to access the courts.[6]  Defendants

---

[6]A claim Plaintiff repeated in his letter to the Court of February 14, 2011.  <u>See</u> Court Docket No. 38.  <u>But</u> <u>see</u> <u>also</u> Court Docket No. 42 [showing record of Plaintiff's receipt of writing and mailing materials].



argue that Plaintiff has submitted no evidence whatsoever to show a denial of access to the Courts, or that Plaintiff suffered any harm in any court action he had pending because of an inability to mail materials or maintain access with the court. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]. Defendants further argue that Plaintiff's numerous filings in the case at bar also refute this claim. The undersigned is constrained to agree. Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. This claim is therefore without merit. Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

### Conclusion

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Such is the case here. Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 9, 2011
Charleston, South Carolina



- 21 -

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

– 22 –
